## JOHN FARRAR *versus* SUSAN AYRES.

Words proper for a devise of an estate for life, will not be construed to pass the fee, by reason of a condition annexed which is to be performed before the death of the devisor and is not known to the devisee before that event.

Thus by a devise to A and his present wife, and to the survivor of them, of a house and land, on condition that A shall serve the testatrix as a coachman so long as she shall require, which condition was unknown to the devisees, A takes only an estate for life.

Declarations of a testatrix before making her will, are not admissible in evidence to vary the legal construction of the will.

WRIT *of entry.* The case came before the Court upon a statement of facts.

Jane Lee, of Cambridge, on the 17th of September, 1805, made her last will, containing the following devise : — "I give and bequeath unto Joseph Ayres and his present wife, and to the survivor of them, the house and land where Mrs. Ruth Freeman lives, situated in Cambridge, on this condition, that said Joseph shall serve me in the capacity of a coachman so long as I shall require, and shall at all times conduct to my satisfaction." The will contained numerous bequests, some of real estate, some of personal, and some of both real and personal, in none of which were there any words of inheritance. The residue of the estate, both real and personal, was " to be divided to and among the several persons named as legatees, their heirs and assigns for ever, in proportion to the true value of the several legacies." On the 22d of September, 1805, the testatrix made a codicil, confirming

---

[2] See *Jenison* v. *Hapgood,* 7 Pick 1.

the will, except in certain particulars not affecting the devise to Joseph Ayres and wife above recited, but revoking the residuary clause, and after devising certain real estate to Benjamin Lee (a brother of her husband) for life, remainder to his son Thomas Lee, his heirs and assigns for ever, " giving and devising the rest, residue and remainder of her estate, both real and personal, to Thomas Lee, his heirs and assigns for ever."

The testatrix died on the 27th of September, 1805. Joseph Ayers continued to serve her from the date of the will until her death, in strict conformity to the condition in the will, and afterwards entered into the house and land devised to him and his wife. On the 3d of September, 1811, he conveyed to the plaintiff, in fee and in mortgage, one undivided half of the house and land. He died in 1821, having survived his wife, and since his death the house and land have remained in possession of the tenant, one of his heirs.

Joseph Ayres was about twenty years a favorite servant and coachman to Thomas Lee, the husband of the testatrix, until T. Lee's decease in 1797, and after that time to the testatrix until her decease. The wife of Ayres was also much employed by T. Lee, and after his death, by the testatrix. J. Ayres, at the death of the testatrix, was seventy years old, had three children, and was lame and poor; and if he had only a life estate in the house and land, his estate is deeply insolvent.

Thomas Lee and the testatrix had no children. The person who was next of kin to the testatrix and would have inherited her estate, was an aunt with whom she was not personally acquainted, and to whom she devised a farm of about two hundred acres. In the inventory of the estate of the testatrix, her real estate was appraised at 36,940 dollars and her personal estate at 182,636 dollars, and her debts and the expenses of administration were 7135 dollars, and after the payment of these debts and expenses and the pecuniary and specific legacies, the residuary legatee received 125,238 dollars, in addition to the real estate devised to him.

In 1800 and 1801 the testatrix frequently spoke to W. Hilliard of her intention to make comfortable provision for

**406**

Ayres and his wife.  She erected the house, applied to Hilliard to examine it and give her his opinion of the value, asked him if it would be a suitable provision for Ayres and his wife, and soon after stated to him her intention of giving the house and land to Ayres and his wife, if he continued in her service, and frequently afterwards expressed her satisfaction in Ayres's services and conduct, and also that she had made so comfortable provision for him.  From the whole tenor of her conversation relating to Ayres and his wife, Hilliard drew the conclusion that she always intended to give, and did actually give the house and land to Ayres and his wife in fee simple.

The will was written by a person not skilled in drafting legal instruments, the codicil by the late chief justice Francis Dana.

If any of the facts stated should be considered by the Court such as would be inadmissible in evidence on a trial of the question, what estate in the house and land was given to Ayres and his wife by the will, such inadmissible facts were to be struck out of the statement.

If the Court should consider that the house and land were devised to Ayres and his wife in fee, the tenant was to be defaulted ; otherwise the demandant was to become nonsuit.

*Oct.* 19*th.*   *Hilliard,* for the demandant, contended that the devise conveyed a fee, by virtue of the condition.   *Lithgow* v. *Kavenagh* 9 Mass. R. 165 ; *Cook* v. *Holmes,* 11 Mass. R. 528.   He cited further, in regard to the construction of wills, *Hawley* v. *Northampton,* 8 Mass. R. 3 ; *Sargent* v. *Towne,* 10 Mass. R. 303 ; *Phillips Academy* v. *King,* 12 Mass. R. 546 ; 1 Roberts **407** on Wills, 490, *et seq.;* 1 Mad. Ch. Pr. 441, *et seq.*   In regard to the admission of extrinsic facts to aid in the construction of a will, he cited 2 Rob. on Wills, 22, *et seq.,* 39, note ; 3 Stark. Ev. 1013 ; Rob. on Fr. 54 ; 1 Rob. on Wills, 39, 40 ; *Lytton* v. *Lytton,* 4 Bro. C. C. 441 ; *Blake* v. *Marnell,* 2 Ball & Beat. 48 ; *Crone* v. *Odell,* 1 Ball & Beat. 460, 466, 480, 481.

*Stearns,* contrà, cited in regard to the inadmissibility of extrinsic evidence to explain a will, *Maybank* v. *Brooks,* 1 Bro. C. C. 84 ; *Doe* v. *Fyldes,* Cowp. 840 : *Goodtitle* v

*Edmonds*, 7 T. R. 635 ; Powell on Dev. 477, *et seq.* ; *Richards* v. *Dutch*, 8 Mass. R. 515 : — as to construing the will to pass a fee, *Bowes* v. *Blacket*, Cowp. 240 ; *Denn* v. *Gaskin*, ibid. 657 ; *Right* v. *Sidebotham*, 2 Doug. 759 ; *Hawley* v. *Northampton*, *ubi sup.*; *Denn* v. *Page*, 1 Bos. & Pul. 261, note ; *Doe* v. *Clarke*, 5 Bos. & Pul. 348 : — and as to the effect of the condition, *Colyer's case*, 6 Co. 16*a* ; 6 Cruise's Dig. *tit.* 38, *Devise*, c. 11, § 49, *et seq.*

The opinion of the Court was drawn up by

PUTNAM J. We have examined this case with much care to ascertain if it were possible to give a fee simple estate to Joseph Ayres, agreeably to what seems to us to have been the intent of the testatrix, but we are satisfied that the rules of law will not permit a result so desirable.

The devise contains no words of inheritance. But the omission of such words, it has been contended by the counsel for the demandant, may be supplied by the charge to which the testatrix subjected the devisee,[1] by the facts and circumstances proved by parol, and by a fair interpretation of the whole instrument taken together.

In regard to the supposed charge upon the devisee, it is sufficient to say that it did not survive the testatrix. She gave the estate upon the condition that the devisee should serve her as coachman so long as she should require him to do so, but she did not subject him to any charge or duty upon taking the estate after her decease. And it does not appear that the devise was intended as a satisfaction for the services of the devisee, or that he ever knew of the provision which his mistress had made for him, until after her death. It cannot be said then that this estate came to the devisee subject to any charge. What is given, whether in fee or for life, is given in a manner to be enjoyed without any payment or duty to be made or performed by the devisee. So that ground of argument fails entirely.

And the inference to be drawn from the face of the will is not more favorable to the demandant. There are no words of inheritance used in any of the devises of the estate,

Farrar
*v.*
Ayres.

*April term*
1828.

408

---

[1] See *Bowers* v. *Porter*, 4 Pick. 198.

until we come to the original residuary clause of the will The testatrix gives her mansion-house in Cambridge to one, a farm to another, and various tracts of land to others; and when she comes to the disposition of the residuum, it is to be divided " to and among the several persons herein named as legatees, their heirs and assigns for ever, in proportion to the true value of the several legacies." Now there is nothing in the residuary clause to show whether a fee or a life estate is given in any devise before contained in the will. If a life estate, then the remainder expectant upon the death of the devisee would pass under the residuary clause. And although we may individually believe that the testatrix intended to give a fee, and not merely a life estate, in the farm to her aunt, and in the house to her old coachman, yet looking at the wil. only, we must judicially come to a different result. If the devise referred to another devise in the same will, and expressed an intention that the devisees should be equally benefited, and upon legal construction the other devise carried a fee, as in the case of *Cook* v. *Holmes et ux.*, 11 Mass. R. 528, [see Rand's ed. 532, n. *b*,] the law might supply the omission of words of inheritance.[1] But the will is not so expressed, and the original residuary clause itself, which it has been supposed might have had some bearing, is repealed by the residuary clause in the codicil; which establishes the original will " so far forth as the same was not changed by the codicil," and that was merely in regard to the disposition of the residuum. So that upon the face of the will we are constrained to determine that the devisee took only an estate for life.[2]

We are now to consider the facts and circumstances ex trinsic to the will. The principle that a devise is always intended by the devisor to be for the benefit of the devisee,

---

[1] See *Baker* v. *Bridge*, 12 Pick. 33; *Butler* v. *Little*, 3 Greenl. 239.

[2] See *Sargent* v. *Towne*, 10 Mass. R. (Rand's ed.) 307, n. *a;* 4 Kent's Com. (3d ed.) 535 to 541, and cases cited in the notes; *Van Alstyne* v. *Spraker*, 13 Wendell, 578. It is now provided by the Revised Statutes, that every devise of land in any will made after the enactment of the same, shall be construed to convey all the estate of the devisor therein, which he could lawfully devise, unless it shall clearly appear by the will that the devisor intended to convey a less estate. Revised Stat. *c.* 62, § 4

(adopted in *Sargent* v. *Towne,* 10 Mass. R. 303,) will not apply to the case at bar ; for the devise of an estate *for life only* in a dwellinghouse is certainly a benefit. In the case last cited the Court say, " that averments are received of facts which were known to the testator, and which may be reasonably presumed to have influenced him in the disposition of his property." But it was proposed in the case at bar, to give in evidence the parol declarations of the testatrix to Hilliard, and his inference from them that she intended to give a fee Suppose that the words of the will, according to the rules of the law, do give only an estate for life, and that the verbal declarations of the testatrix were of an unequivocal intention to give a fee, they would seem to be inadmissible, as they would contradict the writing as interpreted by the settled rules of the law. If a positive verbal declaration of an intention contrary to that which the law infers from the words used in the will be not admissible, the declarations of a circumstantial character would seem inadmissible, *a fortiori ;* for the inference which might be drawn from the latter might be wrong, and the former would not be liable to that objection. The parol evidence however seems not for the purpose of explaining what is doubtful, (as in the case of an imperfect description of the person to whom the legacy is given,) but of controlling what the law considers settled upon the face of the will. It is not to prevent the failure of a bounty which the law presumes to have been intended, but to extend it beyond the legal inference of the words used in the will. If we were to yield to the argument, we should substitute a verbal in the place of the written will.[1]

We are all of opinion, after much consideration of the case, that the demandant should be nonsuited.

Farrar<br>*v.*<br>Ayres.

---

[1] See *Sargent* v. *Towne,* 10 Mass. R. (Rand's ed.) 307, n. a; 2 Stark. Evid '5th Amer. ed.) 553, 554, n. 1.